Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Tim L. Johnson CA Bar No. 265794
tim.johnson@ogletree.com
Jesse C. Ferrantella CA Bar No. 279131
jesse.ferrantella@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:   858-652-3100
Facsimile:    858-652-3101

Attorneys for Defendant BECTON, DICKINSON AND COMPANY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHIL OLSON, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation; and DOES 1 through 100, inclusive<br><br>Defendant. | Case No.  **'19CV865  H    BGS**<br><br>**CLASS ACTION**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[28 U.S.C. § 1332(d) (Class Action Fairness Act)]<br><br>[Filed concurrently with Civil Cover Sheet; Notice of Party with Financial Interest; and Declarations of Adam Peraza and Jesse C. Ferrantella] |

Defendant Becton, Dickinson and Company ("BD") removes this putative class action to the United States District Court for the Southern District of California under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ["CAFA"]) and § 1446 because (1) BD is a citizen of a state different than Plaintiff; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied.

The foregoing facts were true when Plaintiff filed his Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is therefore appropriate as detailed more fully below.

## I. STATE COURT ACTION

1. Plaintiff filed his Class Action Complaint on April 5, 2019 in the San Diego County Superior Court ("Action"). The Action was assigned Case No. 37-2019-00017985-CU-OE-CTL. (Declaration of Jesse C. Ferrantella ["Ferrantella Decl."], ¶ 2; Ex. 1, Complaint.) A copy of the Class Action Complaint is attached as **Exhibit 1**.

2. Plaintiff served his Complaint on BD on April 8, 2019. (*Id*. ¶ 3, Ex. 2.) A copy of the proof of service is attached as **Exhibit 2.**

3. On or about April 18, 2019, Plaintiff filed a Peremptory Challenge and supporting declaration pursuant to California Code of Civil Procedure Section 170.6. (Ferrantella Decl., ¶ 4, Ex. 3.) On or about April 25, 2019, the case was reassigned to Judge Kenneth J Medel, in Department C-66 of the San Diego County Superior Court. (Ferrantella Decl., ¶ 5, Ex. 4.) A copy of the Peremptory Challenge and Notice of Reassignment are attached as **Exhibits 3 and 4**.

4. On May 7, 2019, BD filed an Answer to Plaintiff's Class Action Complaint in the San Diego County Superior Court. (Ferrantella Decl., ¶ 6, Ex. 5.) A copy of the Answer is attached as **Exhibit 5.**

## II. REMOVAL IS TIMELY

5. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), BD's deadline to remove the Action is May 8, 2019. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

## III. REMOVAL IS PROPER UNDER CAFA

6. Removal is proper given Plaintiff's allegations and claims. Plaintiff's Complaint asserts: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code §§ 1194 and 1197 (Unpaid Minimum Wages); (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); (7) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); and (8) Violation of California Business & Professions Code § 17200, *et seq.* (Ex. 1, Complaint.)

7. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. § 1446.

8. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class is a citizen of a State different from BD, the number of individuals in Plaintiff's proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A. CAFA's Diversity of Citizenship Requirement is Satisfied

9. CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCX), 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015) (citing *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014)); 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b).

10. According to the Complaint, Plaintiff is a resident of the State of California within the meaning of 28 U.S.C. 1332(a). (Complaint, ¶ 5 ["Plaintiff PHIL OLSON is an individual residing in the State of California, County of Orange."].)

11. At all relevant times, BD has been a citizen of New Jersey. Under 28 U.S.C. § 1332(c)(1); a corporation shall be deemed to be a citizen of every State and foreign state which it has been incorporated and of the State or foreign state where it has its principal place of business. A company's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). The "nerve center" is normally where the corporation maintains its headquarters. *Id.*

12. At all relevant times, BD has been a company organized under the laws of New Jersey, with its principal place of business in New Jersey. BD's principal place of business is in New Jersey because its headquarters are located there, and that is where BD's executive management directs, controls, and coordinates its activities. BD has not been incorporated in California and has not had its headquarters, executive offices, or principal place of business in California. (Declaration of Alex Peraza ["Peraza Decl."], ¶¶ 2-6.) Accordingly, BD is a citizen of New Jersey and not a citizen of California.

13. Minimal diversity is established because Plaintiff is a citizen of California and BD is not; it is a citizen of New Jersey. Removal is therefore proper

under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### B. CAFA's Class Size Requirement Is Satisfied

14. Plaintiff brings the Action pursuant to California Code of Civil Procedure § 382 on behalf of all persons that fall within this category:

> All current and former California-based (i.e., currently "residing" in California with the intent to remain in California indefinitely) hourly-paid or non-exempt individuals employed (either directly or through a staffing agency or labor contractor) by Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment. (Complaint, ¶ 12.)

15. From April 5, 2015 through the date of this Notice of Removal, BD employed, in the aggregate, at least 572 employees in the putative class as non-exempt employees. (Peraza Decl. ¶ 6.)[1] Thus, CAFA's size requirement is satisfied.

### C. CAFA's Requisite $5 Million Amount In Controversy Is Satisfied

16. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

17. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy under CAFA. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a

---

[1] This amount does not include any contingent workers. In alleging the class size for purposes of CAFA removal, BD does not concede Plaintiff's allegations in the Complaint are accurate or that such a class or sub-class(es) can be maintained or certified.

verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017) (citing *Campbel v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).

18. Plaintiff seeks the recovery of meal and rest period premium pay, unpaid wages (including overtime wages), unreimbursed business expenses, itemized wage statement penalties, and waiting time penalties, on behalf of himself and the putative classes. (*See* Complaint.) The Complaint, on its face, satisfies the $5 million threshold for CAFA removal.[2] *See* 28 U.S.C. § 1332(d).

### 1. **Relevant Data**

19. From April 5, 2015 to the present, BD employed, in the aggregate, at least 572 non-exempt employees in California who worked approximately 39,740 pay periods and whose average hourly rate was approximately $27.90. (Peraza Decl. ¶ 6.)

20. From April 5, 2018 to the present, BD issued at least 11,776 wage statements to approximately 460 non-exempt employees in California. (Peraza Decl. ¶ 8.)

21. From April 5, 2016 to the present, BD terminated approximately 95 non-exempt employees in California, and their average hourly rate was approximately $28.80, which equals an average daily rate (8 hours) of approximately $230.40. (Peraza Decl. ¶ 7.)

### 2. **Wage Statement Penalties**

22. Under California Labor Code § 226, on behalf of himself and the putative class members, Plaintiff seeks statutory penalties for itemized wage statements issued from April 5, 2018 through the present date. (Complaint, ¶¶ 82-

---

[2] In alleging the amount in controversy for purposes of CAFA removal, BD does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does BD concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the Action.

88.) Specifically, Plaintiff contends BD had a "pattern and practice" of failing to provide itemized wage statements for reasons including, but not limited to, "the failure to include total number of hours worked by Plaintiff and other class members." (*Id.*, ¶ 84.) Plaintiff further contends that "Defendants failed to provide complete or accurate wage statements to Plaintiff and the other class members." (*Id.*, ¶ 38.)

23. Plaintiff's wage statement claim incorporates the prior allegations in the Complaint. (Complaint, ¶ 82.) In this regard, Plaintiff alleges that BD "hired Plaintiff and the other class members…and failed to compensate them for all hours worked, missed meal periods, and/or missed rest breaks." (*Id.*, ¶ 18.) He further alleges that "Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (4) hours per week without overtime compensation," and BD "failed to pay Plaintiff and the other class members at least minimum wages for all hours worked." (*Id.*, ¶¶ 34, 36.) He further contends "Defendants failed to properly compensate Plaintiff and the other class members pursuant to California law." (*Id.*, ¶ 40.) Plaintiff thus alleges that BD "knowingly and intentionally" violated the wage statement requirements.[3] (*Id.*, ¶¶ 84, 86.)

24. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015).

25. On behalf of himself and the putative class, Plaintiff seeks statutory penalties under Labor Code § 226(e), which provides for the greater of all actual

---

[3] In contradiction of his previous allegations that Plaintiff and the class were underpaid and not compensated for missed meal or rest breaks, Plaintiff tries to inject ambiguity into his wage statement allegations by inserting the phrase: "Plaintiff and the other class members (but not all)…." (See Complaint, ¶¶ 84-88.) Similar tactics have been rejected where the allegations on the whole support a 100% violation rate. *Vikram v. First Student Mgmt., LLC*, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017) (rejecting similar attempts to qualify wage statement claim). Plaintiff's self-serving and cryptic statements ignore other key allegations in the Complaint and cannot be the basis to avoid a proper removal.

damages or $50.00 for the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in which a violation occurred, up to $4,000.00 per putative class member. (Complaint, ¶ 87; Cal. Lab. Code § 226(e).)

26. As noted above, BD issued at least 11,776 wage statements to 460 putative class members from April 5, 2018 to the present. (Peraza Decl. ¶ 8.)

27. Based on the above, the total amount of potential wage statement penalties to putative class members in controversy is **$1,154,600.00** (460 wage statements x $50 = $23,000; 11,316 wage statements x $100 = $1,131,600 [$23,000 + $1,131,600 = $1,154,600]).

### 3. Waiting Time Penalties

28. Plaintiff seeks the "statutory penalty wages for each day [terminated employees] were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Complaint ¶ 81; *see also id.*, ¶¶ 76-80.) He further contends that "Defendants failed to pay Plaintiff and the other class members the wages owed to them upon discharge or resignation." (*Id.* ¶ 37.)

29. Plaintiff's waiting time claim incorporates the prior allegations in the Complaint. (Complaint, ¶ 76.) Previously in his Complaint, Plaintiff alleged that BD "hired Plaintiff and the other class members…and failed to compensate them for all hours worked, missed meal periods, and/or missed rest breaks." (*Id.*, ¶ 18.) He further alleges that Plaintiff and the other class members were required to work more than eight (8) hours per day and/or forty (4) hours per week without overtime compensation," and "failed to pay Plaintiff and the other class members at least minimum wages for all hours worked." (*Id.*, ¶¶ 34, 36.) He further contends "Defendants failed to properly compensate Plaintiff and the other class members pursuant to California law."[4] (*Id.*, ¶ 40.)

---

[4] Again, in contradiction of his previous allegations that Plaintiff and the class were underpaid and not compensated for missed meal or rest breaks, Plaintiff tries to inject ambiguity into his waiting time allegations by inserting the phrase: "Plaintiff and the other class members (but not all)…." (See Complaint, ¶¶ 81.) For the same reasons, Plaintiff's self-serving statements ignore other key allegations in the

30. California Labor Code § 203 provides that "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." A three-year statutory period applies to claims for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010).

31. As noted above, from April 5, 2016 to the present, BD terminated at least 95 non-exempt employees in California whose average hourly rate was approximately $28.80. This equals an average daily rate (8 hours) of approximately $230.40. (Peraza Decl. ¶ 7.)

32. Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties is **$656,640** ($28.80 per hour x 8 hours x 30 days x 95 putative class members).

### 4.     Meal and Rest Period Premium Pay

33. Under California's Unfair Competition Law ("UCL"), Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendant failed to provide a timely, duty-free meal period. (Complaint, ¶¶ 58, 95.) Similarly, under the UCL, on behalf of himself and the putative class, Plaintiff seeks restitution in the form of one additional hour of premium pay for each workday in which Defendant failed to provide a timely, lawful rest break. (*Id.*, ¶¶ 59, 95.)

34. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). A plaintiff may seek to recover meal or rest period premium pay as a form of restitution under the UCL, under the theory that premium

Complaint and cannot be the basis to avoid a proper removal.

pay constitutes wages. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005).

35. Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members the required rest and meal periods" as required by law. (Complaint, ¶ 26.) He claims that as a "pattern and practice," he and other putative class members could not take 30-minute, duty-free meal periods and that "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (Complaint, ¶ 58, *see also id.*, ¶¶ 51-61.) He further alleges that Defendant had a "pattern and practice" of providing Plaintiff and the other class members without a timely, uninterrupted meal period. (*Id.*, ¶¶ 56-57.)

36. Plaintiff further claims that as a "pattern and practice," he and other putative class members could not take 10-minute rest breaks, and that "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." (Complaint, ¶ 67, *see also id.*, ¶¶ 62-70.) He further alleges that Defendant had a "pattern and practice" of requiring Plaintiff and the other class members to work more than four hours without authorizing or permitting a 10 minute rest period for each four hour period of work. (*Id.*, ¶ 66.)

37. From April 5, 2015 to the present, BD employed, in the aggregate, at least 572 non-exempt employees in California who worked approximately 39,740 pay periods and whose average hourly rate was approximately $27.90. (Peraza Decl. ¶ 6.)

38. BD may employ reasonable assumptions based on the Complaint to determine the amount in controversy. Based on the alleged "pattern and practice" of meal period violations, BD utilized an extremely conservative estimate of 25% meal and 25% rest period violation rates (or 2.5 total violations per week and 5 total per

38451440_1.docx

9   Case No.
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

pay period), resulting in a total amount of meal and rest period premium pay in controversy of approximately **$5,543,730** (39,740 pay periods x 5 total violations per pay period x $27.90 per hour = $5,543,730). Case law finds that similar allegations can even support higher violation rates as a matter of law. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("***courts have found violations rates of 50% proper with language such as 'policy and practice***;'" when faced with nearly identical allegations in lawsuit regarding "pattern and practice" of meal and rest period violations filed by the same counsel Plaintiff has, finding a "50% violation rate for the meal periods and a 25% violation rate for the rest periods" were "reasonable"); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate [or 2.5 violations per week per claim; or 5 total] on both meal *and* rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and Defendant "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods").

### 5. Attorney Fees

39. Based on the above, BD has demonstrated there is at least $7,354,970 in controversy ($1,154,600 in wage statement penalties + 656,640 in waiting time penalties + $5,543,730 in meal and rest premiums = $7,354,970).

40. Plaintiff also seeks attorney fees in connection with the above claims. (Complaint – Prayer for Relief, ¶¶ 8, 15, 26, 43, and 48.) In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6

(C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same).

41. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$1,838,742.50** ($7,354,970 x 0.25).

### 6. Summary

42. Based Plaintiff's allegations, the amount in controversy is at least **$9,193,712.50** ($7,354,970 + $1,838,742.50 = $9,193,712.50). Even excluding Plaintiff's claims to recover overtime wages, minimum wages, or unreimbursed business expenses, the Complaint easily satisfies the $5 million threshold. In fact, there is over $5 million in controversy on the meal and rest claims alone.

## IV. VENUE IS PROPER IN THIS COURT

43. Under 28 U.S.C. § 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Superior Court for the County of San Diego is within the Southern District of California. 28 U.S.C. § 84(d). Therefore, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. 28 U.S.C. § 1441(a).

44. Under 28 U.S.C. §1446(a), this Notice of Removal is accompanied by the Declarations of Alex Peraza and Jesse C. Ferrantella, and Exhibits 1 to 5, which constitute a copy of all processes, pleadings, and orders provided to BD.

45. As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as Plaintiff served his Complaint on April 8, 2019. (Ferrantella Decl. ¶ 3, Ex. 2.)

46. As required by 28 U.S.C. §1446(d), BD provided Notice of Removal to Plaintiff through his attorneys of record.

47. As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for the County of San Diego.

48. If this Court has a question regarding the propriety of this Notice of Removal, BD requests it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

## V. CONCLUSION

For the foregoing reasons, BD removes this putative class action to the United States District Court for the Southern District of San Diego.

DATED: May 8, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Spencer C. Skeen*
    Spencer C. Skeen
    Tim L. Johnson
    Jesse C. Ferrantella
    Attorneys for Defendant BECTON, DICKINSON AND COMPANY

38451440.1