# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHIL OLSON, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation,<br><br>Defendant. | Case No.: 19cv865-MMA (BGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>[Doc. No. 8] |

Plaintiff Phil Olson ("Plaintiff") filed this putative class action against Defendant Becton, Dickinson, and Company ("Defendant") in the Superior Court of California, County of San Diego. *See* Doc. No. 1, Ex. A (hereinafter "Compl."). On May 8, 2019, Defendant removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Doc. No. 1. On June 7, 2019, Plaintiff filed a motion to remand this action back to state court. *See* Doc. No. 8. Defendant filed an opposition, to which Plaintiff replied. *See* Doc. Nos. 9, 10. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 11. For the reasons set forth below, the Court **DENIES** Plaintiff's motion to remand.

## BACKGROUND

Plaintiff, a California resident, previously worked for Defendant as a non-exempt employee in California from December 2016 to September 2017. *See* Compl. ¶¶ 16-17. Defendant is a New Jersey corporation, with its principal place of business in New Jersey. *See* Doc. No. 1, ¶ 12.

On April 5, 2019, Plaintiff filed this putative class action in San Diego Superior Court on behalf of himself and all other similarly situated California employees, alleging the following eight claims for relief: (1) failure to pay overtime wages, in violation of Cal. Lab. Code §§ 510, 1198; (2) failure to provide meal periods, in violation of Cal. Lab. Code §§ 226.7, 512(a); (3) failure to provide rest periods, in violation of Cal. Lab. Code § 226.7; (4) failure to pay minimum wages, in violation of Cal. Lab. Code §§ 1194, 1197; (5) failure to timely pay wages, in violation of Cal. Lab. Code §§ 201, 202; (6) failure to provide complete and accurate wage statements, in violation of Cal. Lab. Code § 226(a); (7) failure to reimburse necessary business-related expenses and costs, in violation of Cal. Lab. Code §§ 2800, 2802; and (8) unfair and unlawful business practices, in violation of Cal. Bus. & Prof. Code § 17200 et seq. *See* Compl. Plaintiff defines the proposed class as "[a]ll current and former California-based . . . hourly-paid or non-exempt individuals employed . . . by Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." *Id.* ¶ 12.

## LEGAL STANDARD

"As a general matter, defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.' 28 U.S.C. § 1441(a). The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). The "propriety of removal" in this case arises under "CAFA[, which] gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart*

*Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84-85 (2014).

A notice of removal must contain a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). There is no presumption against removal jurisdiction in CAFA cases. *See Dart*, 574 U.S. at 89 (noting "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant") (internal quotations omitted). The burden of establishing removal jurisdiction under CAFA lies with the proponent of federal jurisdiction. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 574 U.S. at 87. "Evidence establishing the amount is required" where, as here, the plaintiff challenges the defendant's amount in controversy assertion. *Id.* at 89. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). "Under the preponderance of the evidence standard, a defendant must establish 'that the potential damage could exceed the jurisdictional amount.'" *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1149 (S.D. Cal. 2018) (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)). "[I]n assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Arias v. Residence Inn by Marriott*, No. 19-55803, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019) (publication forthcoming) (quoting *Ibarra*, 775 F.3d at 1199). "Such 'assumptions cannot be pulled from thin air but need some reasonable ground underlying them.' An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.*

## **DISCUSSION**

There is no dispute that the proposed class includes more than 100 employees or that the parties are minimally diverse. Thus, the sole issue before the Court is whether Defendant has shown, by a preponderance of the evidence, that the amount in

controversy exceeds $5 million.

### 1. Requests for Judicial Notice

As an initial matter, Defendant requests that the Court take judicial notice of the complaint and the plaintiff's reply brief in support of a motion to remand filed in a similar action, *Baretich v. Everett Fin., Inc.*, No. 18cv1327-MMA (BGS) (S.D. Cal.). *See* Doc. No. 9-6. Because the Court need not rely on these documents in reaching its conclusion below, the Court **DENIES AS MOOT** Defendant's request for judicial notice.

Additionally, Plaintiff requests that the Court take judicial notice of the Undersigned's decision on the motion to remand in *Baretich*. *See* Doc. No. 10-1. Plaintiff's request is misguided because the Court need not take judicial notice of its previous decisions and "a request for judicial notice is not a proper vehicle for legal argument." *Garcia v. California Supreme Court*, No. CV 12-4504-DWM, 2014 WL 309000, at *1 (N.D. Cal. Jan. 21, 2014); *see also McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014); *Ghalehtak v. FNBN I, LLC*, No. 15-CV-05821-LB, 2016 WL 2606664, at *3 (N.D. Cal. May 6, 2016). Accordingly, the Court **DENIES** Plaintiff's request for judicial notice.

### 2. Amount in Controversy Calculations

Plaintiff's Complaint is silent with respect to damages sought, aside from indicating that "the 'amount in controversy' for the named Plaintiff, including claims for compensatory damages, restitution, penalties, wages, premium pay, and pro rata share of attorney's fees, is less than seventy-five thousand dollars ($75,000)." Compl. ¶ 1. Plaintiff argues that the Court should grant his motion to remand because "Defendant's amount in controversy calculations . . . are based solely on unsupported assumptions." Doc. No. 8 at 8.

To support the amount in controversy calculations in its Notice of Removal, Defendant filed the declaration of Alex Peraza, who is employed by Defendant in the position of Human Resources Business Partner. *See* Doc. No. 1-8 (hereinafter "Peraza

Decl.") ¶ 1. In his role as HR Business Partner, Peraza is familiar with Defendant's corporate and business records. *See id.* ¶ 2. In preparing his declaration, Peraza reviewed personnel and employment data for putative class members. *See id.* Peraza notes that during the class period, Defendant employed in the aggregate at least 572 non-exempt employees in California who worked approximately 39,740 pay periods and had an average hourly rate of approximately $27.90. *See id.* ¶ 6. During the class period, non-exempt employees were issued wage statements on a bi-weekly basis. *See id.*

In opposition to Plaintiff's remand motion, Defendant filed a supplemental declaration of Alex Peraza. *See* Doc. No. 9-1 (hereinafter "Supp. Peraza Decl."). In his supplemental declaration, Peraza provides a spreadsheet outlining Defendant's non-exempt full-time employees in California during the class period. *See id.*, Ex. 1. Exhibit 1 sets forth each employee's identification number, hire date, termination date (if applicable), hourly rate, the number of wage statements during the class period, the number of meal and rest period violations per wage statement based on Plaintiff's allegations at an assumed 25% violation rate, and the total alleged amount of meal and rest period premium pay in controversy. *See id.* Declarant Peraza further provides, as Exhibits 2 and 3 respectively, spreadsheets outlining: (a) non-exempt employees from April 5, 2018 through May 8, 2019; and (b) discharged non-exempt employees from April 5, 2016 to May 8, 2019. *See id.*, Exs. 2, 3. Based on Peraza's declarations and the attached exhibits, Defendant calculates the amount in controversy to exceed $9,000,000, exclusive of Plaintiff's overtime claims, unpaid wages, or unreimbursed business expenses claims. *See* Doc. No. 9 at 4.

In reply, Plaintiff argues that "Defendant continues to make speculative assumptions concerning the frequency of alleged violations across the board, and erroneously assumes varying violation rates without evidentiary support." Doc. No. 10 at 10. As such, Plaintiff asserts that Defendant fails to prove, by a preponderance of the evidence, that the amount in controversy is greater than $5,000,000. *See id.*

///

### a. Meal and Rest Break Claims

The Court first considers the amount in controversy calculations concerning Plaintiff's meal and rest break claims. Plaintiff alleges that employees were required to work without meal periods or rest breaks "[a]s a pattern and practice during the relevant time period set forth herein." Compl. ¶¶ 57, 66. Plaintiff further claims that Defendant failed to compensate employees for work performed during meal and rest periods. *Id.* ¶¶ 58-59, 67-68.

Defendant focuses on the phrase "pattern and practice" to characterize the frequency of the alleged violations. *See* Doc. No. 9 at 5. Defendant, taking into account the information from Peraza's declarations, calculates the amount in controversy for Plaintiff's meal and rest break claims as follows: "[T]he total amount of meal and rest period premium pay in controversy was approximately $5,543,730 (39,740 pay periods x 5 total violations per pay period x $27.90 per hour = $5,543,730)." *Id.* Defendant argues that assuming a 25% violation rate to determine five violations per pay period is conservative because it is "based on admissible evidence and proper assumptions derived from the alleged 'pattern and practice' of meal and rest period violations alleged by Plaintiff." *Id.* Thus, Defendant calculates Plaintiff's second and third causes of action as placing $5,543,730 in controversy. *See id.* Defendant also notes, "Case law finds that similar allegations can even support higher violation rates as a matter of law." Doc. No. 1 at 10 (citing *Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (finding violation rates of 50% for meal period claims and 25% for rest period claims reasonable in light of "pattern and practice" allegations).

Plaintiff does not dispute the veracity of Defendant's evidence, but contends that Defendant's assumption of a 25% violation rate is unreasonable because Peraza's declarations do not indicate how frequently putative class members missed meal and rest breaks, whether they were offered late meal and rest breaks, or were offered meal and rest breaks of a shorter duration than what is required by law. *See* Doc. No. 8 at 11.

Here, the Court first looks to the allegations in the Complaint to determine the

appropriate violation rate. *See Ibarra*, 775 F.3d at 1197 ("In determining the amount in controversy, courts first look to the complaint."); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint"). Defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199. Plaintiff alleges that the meal and rest break violations occurred as part of a "pattern and practice." Compl. ¶¶ 57-59, 66-68. Defendant argues that 25% is an "extremely conservative estimate" for a violation rate based on "pattern and practice" allegations. *See* Doc. No. 1 at 9. The Ninth Circuit has made clear that assumptions for an amount in controversy calculation "cannot be pulled from thin air[.]" *Ibarra*, 775 F.3d at 1199. However, "in assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions' . . . [which] may be reasonable if [they are] founded on the allegations of the complaint." *Arias*, 2019 WL 4148784, at *4 (quoting *Ibarra*, 775 F.3d at 1199).

In *Arias*, the plaintiff alleged that the defendant routinely failed to provide compensation for missed rest breaks, among other claims. *See id.* at *5. For the plaintiff's rest break claim, the defendant assumed one missed rest break per week (a 20% violation rate) and calculated the amount in controversy to be $2,155,493, in its most conservative estimate. *See id.* at *2. The defendant also suggested that assuming three missed rest periods per week (a 60% violation rate) would be conservative and would place $6,466,480 in controversy. *See id.* The Ninth Circuit indicated that the defendant's "assumptions are plausible and may prove to be reasonable in light of the allegations in the complaint." *Id.* at *5. The court made clear that a defendant need not "prove it actually violated the law at the assumed rate." *Id.* "'The amount in controversy is *simply an estimate* of the total amount in dispute, not a prospective assessment of defendant's liability.'" *Id.* (emphasis added) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010)). Rather, "[w]here a removing defendant has shown potential recovery 'could exceed $5 million and the [p]laintiff has neither acknowledged

nor sought to establish that the class recovery is potentially less,' the defendant 'has borne its burden.'" *Id.*

Plaintiff cites to several cases wherein district courts, including this Court, rejected the defendant's proposed violation rates as speculative and arbitrary. All of these cases, however, predate the Ninth Circuit's recent opinion in *Arias*, which this Court is bound by. In this case, Defendant determined that a 25% violation rate is appropriate by carefully analyzing Plaintiff's "pattern and practice" allegations in the Complaint and reviewing relevant caselaw. *See Bryant*, 284 F. Supp. 3d at 1151 (finding a 60% violation rate for the meal period claim and a 30% violation rate for the rest period claim proper where the complaint alleged that the defendant had a "policy and practice" of meal and rest period violations); *Elizarraz*, 2019 WL 1553664, at *3-4 (finding a 50% violation rate for the meal periods and a 25% violation rate for the rest periods reasonable where the complaint alleged a "pattern and practice" of meal and rest period violations). Additionally, "while not required, Plaintiff has not offered any better estimate of the alleged violation rate, despite the fact that []he most likely knows at least roughly how often []he was not afforded the required meal [and rest] breaks." *Lopez v. Adesa, Inc.*, No. EDCV 19-1183 PSG (RAOx), 2019 WL 4235201, at *3 (C.D. Cal. Sept. 6, 2019).

Thus, upon review of Plaintiff's allegations, Defendant's evidence, and the applicable caselaw, the Court finds that application of a 25% violation rate is reasonable. *See Arias*, 2019 WL 4148784, at *5 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'") (quoting *Ibarra*, 775 F.3d at 1199). Accordingly, the Court finds that Defendant has satisfied its burden, by a preponderance of the evidence, that the amount in controversy with respect to Plaintiff's meal and rest break claims is

$5,543,730.[1]  As a result, the Court has subject matter jurisdiction and remand is improper.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated:  September 25, 2019

HON. MICHAEL M. ANELLO
United States District Judge

---

[1] Because the amount in controversy for Plaintiff's meal and rest break claims exceeds the jurisdictional threshold, the Court need not calculate the amount in controversy for Plaintiff's wage statement claim, waiting time claim, or attorney's fees.  *See id.* at *6 n.5.